## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TEFERI ABATE ADEM,** | : | **12cv646** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JANET NAPOLITANO, Secretary of** | : | |
| **the Department of Homeland** | : | |
| **Security; ALEJANDRO MAYORKAS,** | : | |
| **Director of the United States** | : | |
| **Citizenship & Immigration Services;** | : | |
| **DONALD NEUFELD, Associate** | : | |
| **Director of the Service Center** | : | |
| **Operations Directorate of the** | : | |
| **United States Citizenship &** | : | |
| **Immigration Services; MARK J.** | : | |
| **HAZUDA, Acting Director of the** | : | |
| **Nebraska SERVICE CENTER of the** | : | |
| **United States Citizenship &** | : | |
| **Immigration Services,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OF DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

In this action, plaintiff Teferi Abate Adem challenges the United States

Citizenship & Immigration Services's ("USCIS") denial of his I-730, Asylee Relative

Petition, on behalf of his asserted adopted daughter, Abebech Adem.  Defendants are

government officials, who with exception of Janet Napolitano, are officers of USCIS.

Now pending are cross motions for summary judgment.  For the following

reasons, plaintiff's motion for summary judgment will be granted and defendants'

motion for summary judgment will be denied.

# I. BACKGROUND

The parties have submitted statements of fact in compliance with Local Rule of Civil Procedure 56(a) with supporting exhibits and affidavits.[1]  These materials reveal the following factual background.

Plaintiff is a native and citizen of Ethiopia who was born on December 21, 1967.  His sister Abebech Adem was born on September 1, 1986 in Ethiopia.  In August 1992, her village held a good-bye ceremony to celebrate her departure from the village to go live with her brother, the plaintiff.

Ms. Adem lived with plaintiff in his house in Addis Ababa from 1992 until September 2002, with the exception of two brief periods in 1994-95 and 1999-2000 when plaintiff was completing his graduate studies in the United States.  During those periods, he arranged for Ms. Adem to live with his uncle in Addis Ababa.

In September 2002, plaintiff fled Ethiopia with his wife and infant son but did not bring Ms. Adem with him.  On December 27, 2006, USCIS granted plaintiff asylum in the United States.

On July 3, 2007, plaintiff timely filed a form I-730 on behalf of Ms. Adem, who was then twenty years old.  In the petition, he asserted that Ms. Adem was his adopted child.  He submitted her birth certificate; an excerpt from the Revised Family Code of

---

[1]Defendants manually filed the administrative record and provided the Court with a copy of more than 800 loose-leaf pages secured with a rubber band.  In the future, to facilitate the review of the materials, any documents provided to the Court in paper form, including courtesy copies, should be submitted stapled, bound, or in a loose-leaf notebook.

2000; a decision from the Kebele community court[2]; a letter from the 02 Local Government; a proof of residence document form the Office of Dweller Association; and letters from the Sitta Elementary Full Cycle School, Southern Woolo School Administration, and Dej/Belay Zeleke No. 1 Primary School, stating that Ms. Adem had been a student at these schools and was under the custody of plaintiff;[3] and affidavits from Dr. Adem, his wife, his cousin and his friend.  On July 31, 2008, USCIS requested further evidence.  In addition to the documents that he had already submitted, plaintiff provided a letter from Teshale Tibebu, an Associate Professor of History; a scholarly article by Simon Messing regarding Ethiopian naming customs; and a statement of household composition.

On November 7, 2008, USCIS approved the Form I-730 and forwarded the petition to the U.S. Embassy in Addis Ababa.  In response to a request for further information, plaintiff submitted photographs of the family taken before Dr. Adem fled Ethiopia; receipts for money transfers for Ms. Adem's benefit; copies of calling cards used to contact Ms. Adem; and copies of letters and emails exchanged between plaintiff and Ms. Adem.

A United States consular officer interviewed Ms. Adem on March 3, 2009, and determined that she did not qualify as Mr. Adem's adopted child because she had not been legally adopted while under the age of sixteen.

---

[2]As stated in the administrative record, Kebele courts are the "primary unit of administration" in rural Ethiopia, and they deal with community issues and disputes. A.R. 566.

[3]Plaintiff was listed as Ms. Adem's parent in the records of the Dej Delay Zeleke No.1 Primary School.

On July 14, 2010, USCIS issued a Motion to Reopen/Intent to Deny the Form I-730 adjudication.  Plaintiff then submitted to the USCIS the documents he had previously sent to the U.S. Embassy; a reply memorandum to the motion to reopen; an affidavit and curriculum vitae from Dr. Donald Levine, Professor Emeritus of Sociology at the University of Chicago; a 1993 proclamation providing for establishment of courts of the Central Transitional Government of Ethiopia; and an excerpt of an International Human Rights Law Group report entitled, "Ethiopia in Transition: A Report on the Judiciary and the Legal Profession."

On September 21, 2010, the USCIS issued its decision denying plaintiff's petition.  It explained:

> In order to establish that a customary adoption, as opposed to an adoption through civil law, is valid for immigration purposes, the petitioner must demonstrate that the customary adoption creates a legal status or relationship that is sanctioned by that country's government as having legal force to create rights comparable to those of natural legitimate children.  Matter of Fakalata, 18I&N Dec. 213, 216-217 (BIA 1982).

> In other words the customary adoption must be recognized by the home country as having legal effect to relieve the natural (biological) parents of all parental rights and responsibilities and to terminate all legal relationships between the adopted person and the natural parents.

The decision "note[d] that when Teferi Abate ADEM took responsibility for the beneficiary in August 1992, the petitioner had not yet reached the age of twenty-five as required in Article 184 [of the Revised Family Code of 2000]."  It concluded: "As there is no objective evidence that Ethiopia recognizes customary adoptions and the petitioner had not yet reached the age required under Ethiopian law to qualify as an adoptive parent, there is no basis on which the Service can determine that a legal adoption

occurred in 1992." The decision goes on to find that "for immigration purposes, the

adoption of Abebech Abate Adem was finalized on March 7, 2007, at which point in

time the beneficiary was 20 years old and after the petitioner had been granted

asylum."

On October 15, 2010, plaintiff submitted a Motion to Reopen and Reconsider to

USCIS. In addition to re-submitting evidence, Dr. Adem provided a copy of Ethiopia's

1995 Report to the United Nations Committee on the Rights of the Child ("Ethiopia's

1995 Report to the UN") and a complete copy of Ethiopia Revised Family Code of

2000.

On January 11, 2011, USCIS affirmed its prior denial of the I-730 petition. The

decision stated:

> The motion submitted by the petitioner seeks consideration of a 1995
> report submitted by the Transitional Government of Ethiopia to the United
> Nations Committee on the Rights of the Child. The report discusses
> customary adoption in Ethiopia and references sections of the Civil Code.
> As no copy of the said Civil Code was submitted, the Service is unable to
> determine if the evidence of record establishes a legally binding
> customary adoption.
>
> The motion also seeks consideration of an affidavit from Dr. Donald
> Levine, previously submitted and reviewed as part of the record. The
> affidavit states the opinion of Dr. Levine, but provides no basis on which
> the Service could assess whether a legally binding customary adoption
> occurred in 1992.

On February 11, 2011, Dr. Adem submitted a second motion to reopen and

reconsider his petition. Dr. Adem resubmitted his prior evidence and added for review:

(1) Excerpts of the 1960 Civil Code of the Empire of Ethiopia concerning adoption; (2) a

copy of the Human Rights Watch report entitled, "100 ways of Putting Pressure:

5

Violations of Freedom of Expression and Association in Ethiopia" (2010); (3) three law

review articles discussing Ethiopian law: "Modernization of Law in Ethiopia: A Study in

Process and Personal Values, 11 Harv. Int'l. L.J. 73 (1970), John Beckstrom, "Adoption

in Ethiopia Ten Years After the Civil Code, 16 J. Afr. Law 145 (1972) and  John Van

Doren, Positivism and the Rule of Law, Formal Systems or Concealed Values:  A case

Study of the Ethiopian Legal System, 3 J. Transnat'l L. & Pol'y 165 (1994); (4) a copy of

Tessema v. Lengane, 22 J. Eth. Law 34 (2008); and (5) a copy of the United States

State Department Report on Intercountry Adoption in Ethiopia.

     On June 14, 2011, defendants' decision reaffirmed the denial of the petition,

stating that "based on the record it does not appear the case at hand had judicial

recognition of the adoption until 2007."  The decision elaborated:

> USCIS notes that when Teferi Abate ADEM took responsibility for the
> beneficiary in August 1992, the petitioner had not yet reached the age of
> twenty-five as required in Article 184.  In 1992 the petitioner had not yet
> reached the age required under Ethiopian law to qualify as an adoptive
> parent.  In addition, there is no objective evidence that the 1992 adoption
> was registered with a court as required by the 1960 civil code.  Because of
> these two deficiencies USCIS cannot determine that a legal adoption
> occurred in 1992.
>
> There is evidence which has been submitted which establishes an
> adoption was finalized in 2007, through the registration with the Kebele
> Court of the Amhara National Regional Government, Southern Wollo
> Administrative Zone.  However, this adoption fails to meet the statutory
> requirements of Section 101(b)(1)(E) which requires the child being
> adopted be under the age of 16, because the beneficiary was 20 years of
> age in 2007.  In accordance with, Matter of Cariaga, 151&N Dec. 716 (BIA
> 1976) retroactive effect cannot be given to the 2007 adoption.  In addition,
> because the beneficiary was 20 years of age, this adoption would not be
> legally recognized under the Ethiopian Revised Family Code of 2000
> Article 185, which requires the adopted child be less than eighteen years
> of age.
>
> The decision considered Ethiopia's 1995 Report to the UN but found that it

6

established neither the validity of customary adoptions nor the nullification of the 1960 Civil Code's repeal of customary law.

On April 20, 2012, plaintiff filed this complaint challenging the June 14, 2011 denial.

Plaintiff avers that Ms. Adem continues to live in their home in Addis Ababa where she rents rooms to generate income, that he sends her gifts and substantial sums of money for her support, and that he calls her every two weeks and exchanges emails and letters.

## II.  DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc., 664 F.2d at 351.

In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.  The same standard applies for cross motions for summary judgment.

In reviewing the denial of an immigration petition such as the instant action, the district court is limited to consideration of the administrative record.  5 U.S.C. § 706; Florida Power & Light Co. v. Lorion, 470 U.S. 729, 734 (1985).  The Administrative Procedure Act ("APA") provides that a district court may only overturn USCIS's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).

An agency decision may be deemed arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of the agency expertise."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29 , 43 (1983); Islander East Pipeline Co., LLC v. Connecticut Dep't. of Envtl. Protection, 482 F.3d 79, 94 (2d Cir. 2007).  Arbitrary and capricious action may also be found where subjective

bad faith by agency decision makers deprives a petitioner of fair and honest

consideration.  Tummino v. Hamburg, 2013 WL 1348656, *20 (E.D.N.Y. April 5, 2013);

accord, Latecoere Int'l, Inc. v. U.S. Dept. of Navy, 19 F.3d 1342, 1356 (11th Cir. 1994).

       The Court must consider whether the denial was based on a consideration of the

relevant factors and whether there has been a clear error of judgment.  Citizens to

Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).  The Court must

accept the agency's factual findings if those findings are supported by substantial

evidence on the record as a whole.  Arkansas v. Oklahoma, 503 U.S. 91, 113 (1992).

Substantial evidence requires "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

401 (1971).

       The agency must "announce its decision in terms sufficient to enable a reviewing

court to perceive that it has heard and thought and not merely reacted."  Ogbolumani v.

Napolitano, 557 F.3d 729, 735 (7th Cir. 2009).  "Even when an agency explains its

decision with less than ideal clarity, a reviewing court will not upset that decision on that

account if the agency's path may reasonably be discerned."  Ala. Dep't of Envtl.

Conservation v. E.P.A., 540 U.S. 461, 497 (2004).

       Post-hoc rationalizations for agency action that are not articulated by the

agency's orders are not reviewable by the district court.  Burlington Truck Lines, Inc. v.

United States, 371 U.S. 156, 168 (1962).

       Generally, courts afford deference to the agency's construction of its governing

statute except where the interpretation contravenes Congress's unambiguously

expressed intent.  Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837,

842-3 (1984) (if the statute speaks clearly to the precise question at issue, court "must give effect to the unambiguously expressed intent of Congress").   A deferential standard is also inappropriate on a question of foreign law.  Fed. R. Civ. P. 44.1; Kaho v. Ilchert, 765 F.2d 877, 882 (9th Cir. 1985).

Defendants assert that the denial of the I-730 petition withstands this Court's review because there is a rational connection between the facts found and the conclusions made.  Defendants maintain that it was reasonable to find that plaintiff had failed to sustain his burden to establish that Ethiopia legally recognized customary adoptions.  Plaintiff does not challenge the defendants' interpretation of "child" as defined by the Immigration and Nationality Act ("INA"), but rather the reasonableness of the defendants' actions under the relevant legal authority of the INA and precedent.

An I-730 beneficiary who is claimed as an adopted child must meet the definition of "child" under the INA, 8 U.S.C.  § 1101(b)(1)(E)(I):

> (1) The term "child" mean an unmarried person under twenty-one years of age who is . . . (E)(I) a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years . . . .

The adoption must been finalized before the beneficiary's sixteenth birthday.  8 C.F.R. § 204.2(d)(2)(vii).

## A.     Defendants' Review of the I-730 Petition

Defendants' review and analysis of plaintiff's petition is difficult to reconcile.  In reliance upon Matter of Fakalata, 181&N, defendants required plaintiff to demonstrate that a customary adoption "creates a legal status or relationship that is sanctioned by that country's government as having legal force to create rights comparable to those of

natural legitimate children." However, defendants proceeded to determine that a customary adoption must meet the legal requirements of 1960 Civil Code or the 2000 Revised Family Code. Plaintiff argues that defendants erred by ending the inquiry at the statutory adoption requirements, and that they unreasonably failed to take into account authoritative evidence recognizing the continuing validity of customary adoptions.

The Court finds defendants' consideration of the I-730 petition troubling on several grounds: Defendants have (1) construed Ethiopia's 1995 Report to the UN in a manner that undermines the structure and plain language of the Report's Articles; (2) unreasonably discounted expert testimony that is consistent with Ethiopia's 1995 Report to the UN; (3) misinterpreted the clear purpose and language of Kebele Court decision by finding that it signifies the finalization of Ms. Adem's adoption; and (4) misapplied the statutory adoption provisions to facts of this case.

1.  Ethiopia's 1995 Report to the UN

The decision dated January 11, 2011 recognized that Ethiopia's 1995 Report to the UN discussed customary adoption in Ethiopia but it noted that the Report referenced the 1960 Civil Code.  The decision concluded:  "As no copy of the said Civil Code was submitted, the Service is unable to determine if the evidence of record establishes a legally binding customary adoption."

In his subsequent petition, plaintiff submitted the 1960 Civil Code, and a letter from his counsel explaining that the Civil Code was not relevant to a customary adoption in 1992.

The subsequent June 14, 2011 decision indicated that the USCIS had reviewed Ethiopia's 1995 Report to the UN:

11

> The report does contain an analysis of the requirements to create a legally recognized adoption, and it cites the 1960 Ethiopian Civil Code.  However a review of the civil code 804 clearly indicates that "the contract of adoption shall be of no effect unless it is approved by the court."  In the case at hand the only proof submitted which establishes that the adoption was approved by the court was a decision rendered on March 7, 2007 by the 02 Kebele Court . . . .

The decision rejected the plaintiff's assertion that Ethiopia's 1995 Report to the UN coupled with Ethiopian case law demonstrated the nullification of the 1960 Civil Code's provision repealing customary adoption in favor of the legal adoption process.  The June 14 decision opined:  "If a judge chooses to enforce the customary adoption it is within his discretion to do so.  However, based on the record it does not appear the case at hand had judicial recognition of the adoption until 2007."

Defendants construe the Articles relevant to adoption in Ethiopia's 1995 Report to the UN as requiring that valid customary adoptions obtain statutorily-required court approval.  The Court finds such construction to be unreasonable.

In its introduction, Ethiopia's Report to the UN explains that it was prepared by the "Children's Youth and Family Welfare Organization under the Ministry of Labour and Social Affairs, with active participation of the Ministries of Justice, Education, Health, Information and Culture and Sports."  The Articles therein refer to adoption through both "customary processes" and the legal process pursuant to the 1960 Civil Code.

Specifically, Articles 81 through 83 address adoption in the context of customary processes.  Article 81 provides (1) that adoption is the "full assimilation of an outsider into a family as a child;" (2) that the "customary adoption processes are meant to result

in complete social assimilation of the child; and (3) that "the parents agree to act toward the child as if he had been naturally born to them and not to discriminate if there are other children in the family."  Article 82 explains: "Legally, the process results in the child being entitled to maintenance from the adoptive parents."  Article 83 states:

> Customarily, an adoptive parent shall be of age.  It is also traditional that a conceived child could be adopted before birth.  The modern approach is that the consent of both the mother and father of the child is required if they are alive and known or other relative as surrogates if necessary.

Article 84 shifts to a discussion specific to Article 975 of the Civil Code.  It sets forth the statutory definition of adoption, adoption procedures and the effects of a final adoption, all of which are similar to that of customary adoption except that the statutory adoption procedures require the adoption contract or agreement to be approved by a court of law.[4]

Thus, the Articles provide two separate but nearly identical definitions of adoption and track two parallel adoption processes and effects.  This textual structure evinces that the 1995 Ethiopian Government recognized that customary adoption creates an enforceable legal status comparable to natural children.  Further, the Articles do not require that customary adoptions must also comply with the Civil Code by receiving court approval to have legal effect.  To interpret the text in such a way would

---

[4]Article 84 states that "[u]nder article 975 of the Civil Code adoption is a bond of filiation created artificially by a contract of adoption between the adopter and the adopted child."  It explains that once the "formality is complete" the effect of the adoption is that "the adopted child for all purposes is like the biological child of the adopter and is entitled to all the rights of a biological child."

undermine and render redundant the parallel but separate provisions devoted to the processes and effects of customary and statutory adoption.

The Court's construction of the text is confirmed in the plain language of Article 87, which notes: "There is no data on in-country adoption since it is mostly effected through agreement between families as the custom requires, and not through the courts." Defendants' interpretation that all adoptions must comply with the Civil Code renders this statement meaningless.

The Ethiopian Supreme Court case, <u>Tessema v. Lengane</u>, 22 J. Eth. Law 34 (2008), which plaintiff provided for defendants' review, supports the assertion that customary adoption continues to have legal force in Ethiopia. In that case, the Ethiopian Supreme Court recognized the legal force of a divorce that had not occurred with a court order as required by the Revised Family Code of 2000. The case does not explicitly refer to a customary divorce but it indicates that the Ethiopian Supreme Court is willing to find an enforceable legal status based on factual circumstances even where the parties have not complied with a specific statutorily-prescribed process.

The Court finds that defendants adopted a clear misinterpretation of Ethiopia's 1995 Report to the UN. The only logical reading of Ethiopia's 1995 Report is that bona fide customary adoptions have legal effect to provide the adoptive child rights to maintenance and inheritance from the adoptive parents. Defendants' review of Ethiopia's 1995 Report to the UN was arbitrary and capricious. The Court will remand the matter to the agency with the instruction to find that Ethiopia's 1995 Report to the UN establishes that the 1995 Ethiopian Government recognized the legal force of customary adoptions.

14

2.  Dr. Donald Levine's Affidavit

Plaintiff argues that the Court should find defendants' meager review of Dr. Levine's affidavit as arbitrary and capricious in light of (1) his "indisputable qualifications" as an expert on customary adoptions, (2) reliance on similar experts in other immigration cases, and (3) citations to Dr. Levine's opinions in other immigration cases including Tadesse v. Gonzalez, 492 F.3d 905, 908 (7th Cir. 2007), which described Dr. Levine as "an eminent scholar of Ethiopian politics and culture at the University of Chicago who has written two books and dozens of academic articles about Ethiopia."

In Tadesse, a case involving an application for asylum, the Seventh Circuit held as arbitrary and capricious rejection of the Dr. Levine's expert affidavit.  The petition for asylum required a determination of whether the Ethiopian government might have used a photocopied deportation order in November 2000.  Dr. Levine's affidavit proffered that it was "entirely plausible that the prison officers served . . . a mass-produced, as opposed to individually-prepared, document ordering [Tadesse's] deportation" and that the "chaotic conditions in which the deportations took place, compounded by the illiteracy and near illiteracy of many low-level government employees, could very likely have led in many cases to blanket authority to effect deportations."  The Immigration Judge observed that Dr. Levine may be knowledgeable about Ethiopia but he was not expert relative to the issuance of documents.  The Seventh Circuit held that Levine was an appropriate expert on the issue and his affidavit was based on his understanding of the situation in Ethiopia and spoke directly to the heart of Tadesse's claim.

In the instant matter, Dr. Levine's affidavit states that he has studied Ethiopian

society for fifty years, has provided expert opinion in numerous immigration cases, and has played a leadership role within the international community of Ethiopian scholars. He explains that the adoption procedure based on the village celebration of Ms. Adem's departure from the village is extremely common in Ethiopia and would be considered to have legal force as part of the customs of Ethiopia. He elaborates that Ethiopians do not generally seek out court procedures unless necessary just as plaintiff sought Kebele Court recognition to submit in this United States asylum petition on behalf of Ms. Adem.

Defendants' January 11, 2011 decision found that Dr. Levine's affidavit provided "no basis on which the Service could assess whether a legally binding customary adoption occurred in 1992."[5] The decision offers no other justification for affording Dr. Levine's affidavit such little weight, but defendants' brief asserts that Levine's affidavit does not express the "formal, authoritative views of the Ethiopian government." In fact, the administrative record contained a statement from the Ethiopian government that is consistent with Dr. Levine's affidavit: Both Dr. Levine's affidavit and Ethiopia's 1995 Report to the UN reflect that most in-country adoptions are effected according to custom by family agreement without court order.

Accordingly, defendants' review appears to have ignored an important aspect of the case and offered an explanation for its decision that runs counter to the evidence. The Court finds that defendants' consideration of Dr. Levine's affidavit is arbitrary and

---

[5]This statement reveals defendants' flawed analysis that has blurred the legal issue of whether customary adoptions are legally recognized with the factual issue of whether a customary adoption occurred. See Kaho v. Ilchert, 765 F.2d at 885 (reversing BIA decision that confused the legal issue with factual issues).

capricious.

    3. <u>March 7, 2007 Kebele Court Decision</u>

Plaintiff submitted a decision from the Kebele court to the Leganbo District Office dated March 7, 2007.  The decision sets forth that Abate Adem and Merema Legesse, the biological parents of Ms. Adem, gave adoption of Ms. Adem to plaintiff when she was five years old.  They requested that the Kebele court, upon reviewing their proof, issue a "document that proves that she was given custody to our older son."  The March 7, 2007 decision listed the witnesses that it examined and issued its findings as follows:

> The court has heard the witnesses of three individuals to the fact that Mr. Abate Adem and his wife Mrs. Merema Legesse gave adoption of their daughter Abebech Abate to their older son Teferi Abate.  The court, after hearing the witnesses and making its own investigation, has accepted the claim that Abebech Abate was given for adoption to her brother Teferi Abate.

Defendants' September 2010 decision found this document established that "for immigration purposes, the adoption of Abebech Abate ADEM was finalized on March 7, 2007, at which point in time the beneficiary was 20 years old and after the petitioner had been granted asylum." Defendants' January 11, 2011 decision affirmed the prior denial based on plaintiff's failure to prove that the adoption occurred prior to his 2006 asylum.  Defendants' June 14, 2011 decision held that evidence established that "an adoption was finalized in 2007, through registration with the Kebele Court. . . ."

These decisions reflect that defendants have construed the Kebele court decision as satisfying the final legal step of Ethiopia's statutory adoption process, which requires that an adoption be registered by the court within one year of the adoption contract.  However, the text of Kebele Court decision explains that Ms. Adem's

biological parents sought a determination relative to whether a customary adoption had occurred in 1992, and that after an investigation of the evidence, the Kebele Court affirmed the occurrence of such adoption.  The Kebele Court decision does not contemplate that the decision establishes finalization of Ms. Adem's adoption.

Defendants' June 14, 2011 denial of the I–730 petition concludes that the adoption was finalized "through the registration with Kebele Court" consistent with statutory requirements for adoption, but also notes that 2000 Revised Family Code prohibits adoptions of individuals who are not "less than eighteen years of age. . . ." This finding highlights the logical flaw in defendants' interpretation of the Kebele Court decision.  Ms. Adem's adoption cannot be considered finalized by a court in 2007 in accordance with Ethiopian statutory adoption if such an adoption is legally unsustainable under the statute.  Thus, defendants' construction of the evidence in such a manner constitutes an arbitrary and capricious determination as it is illogical and runs counter to the plain meaning of the Kebele Court decision.

4. Reference to 2000 Revised Family Code

This Court is also concerned that defendants' denials relied, at least to some extent, upon an erroneous application of the 2000 Revised Family Code Article 184 that requires the age of the adopter to be "not less then twenty-five years."

Defendants' September 21, 2010 decision stated:

The Service notes that when Teferi Abate ADEM took responsibility for the beneficiary in August 1992, the petitioner had not yet reached the age of twenty-five as required in Article 184.  As there is no objective evidence that Ethiopia recognizes customary adoptions and the petitioner had not yet reached the age required under Ethiopian law to qualify as an adoptive parent, there is no basis on which the Service can determine that

a legal adoption occurred in 1992.[6]

In a letter to defendants dated October 15, 2010, plaintiff's counsel pointed out that the 2000 Revised Family Code does not apply to adoptions that took place prior to its coming into force.  In a letter accompanying the February 11, 2011 petition, plaintiff's counsel urged defendants to review the evidence relevant to a determination that a customary rather than a statutory adoption occurred.

Nevertheless defendants' June 14, 2011 decision "note[d] that when Teferi Abate ADEM took responsibility for the beneficiary in August 1992, the petitioner had not yet reached the age of twenty-five as required in Article 184."

The reference to Article 184 of the 2000 Revised Family Code in the context of the 1992 adoption is clearly erroneous because that law had yet to be enacted.  Further, there is no indication or argument that Article 184 applies retroactively.

Plaintiff had not argued that Ms. Adem's adoption complied with the legal process set forth in Ethiopia's civil codes but rather that customary adoption and, that of Ms. Adem, is recognized in Ethiopia.  However, defendants applied legal standards of adoption pursuant to law enacted in 2000 to determine whether a customary adoption occurred in 1992.

Defendants' repeated application of the 2000 Revised Family Code to facts that occurred in 1992 constitutes clear error.

---

[6]The January 11, 2011 decision held that plaintiff had failed to overcome the grounds for the prior denial.

**B.      Remand**

In light of the arbitrary and capricious review of the evidence submitted, the Court will remand the matter to the USCIS with the instruction to reopen the matter so that defendants may apply the proper standards to the facts relevant to Ms. Adem's asserted customary adoption.

Pursuant to Federal Rule of Civil Procedure 44.1 and based upon Ethiopia's 1995 Report to the UN and the Ethiopian Supreme Court decision, <u>Tessema v. Lengane</u>, this Court makes the conclusion of law that customary adoptions by agreement of the family members and without court order are recognized in Ethiopia as having legal force.

Defendants must now answer whether a bona fide customary adoption of Ms. Adem occurred in 1992 by reviewing the relevant evidence, including, but not limited to, the Kebele Court decision, the affidavits of friends and family members, the family photographs, emails and correspondence, records of financial support, school records and letters from the schools attended by Ms. Adem.

After the matter has been reopened, plaintiff should have opportunity to submit additional materials if necessary.

## III.  CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment [Doc. # 27] is GRANTED, and defendants' motion for summary judgment is DENIED [Doc. #26].  The

defendants' decision to deny the I-730 Petition is REVERSED and REMANDED with instructions to reopen this matter for review consistent with this ruling.

The clerk is instructed to remand this case to the USCIS.

Dated this __29th__ day of April, 2013 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE